# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MEEK v. SPRACHER.

### December 4th, 1890.

1. PRACTICE IN CHANCERY—*Parties.*—Vendee sues for abatement of price for deficiency in quantity of land. A person, not named in the contract, but known to vendee to have given his bond for part of the purchase money, and to be entitled to part of the land, is a proper party defendant.

2. IDEM—*Fraud—Adequate remedy at law.*—The fact that plaintiff has adequate remedy at law, does not oust court of equity of its jurisdiction, where relief is sought on the ground that vendor fraudulently misrepresented the quantity of land sold.

3. IDEM—*Charge of fraud.*—The charge of fraud is sufficiently specific when it is alleged that vendor assured vendee that the tract contained 800 acres, whereof 300 were cleared ; that vendee, relying on the assurance, made the purchase ; that the tract contained only 700 acres, whereof only 158 were cleared, and that vendor knew this assurance was false.

4. IDEM—*Defect in title—Disturbance of possession.*—Where answer in such suit alleges defect in title to property received in exchange for land sold, but does not allege that his possession has been disturbed, or file a cross-bill, he cannot complain if exception to that part of answer is sustained, especially when final decree is without prejudice to his right to sue for such defect.

5. IDEM—*Issue out of chancery.*—Of its own motion the court may direct an issue out of chancery, to be tried at its bar when the evidence in the depositions is conflicting.

6. IDEM—*Verdict—Decree—Instructions—Evidence.*—A decree, based on verdict at trial of issue out of chancery, the decision whereof depended on the credibility of conflicting witnesses, will not be reversed because of errors in rulings on evidence and instructions; when it appears from all the evidence, admitted and rejected, that the verdict is right. *Snouffer* v. *Hansbrough,* 79 Va., 166.

Appeal from decree of circuit court of Tazewell county, rendered on the 7th day of November, 1889, in the chancery cause wherein William L. Spracher was complainant and Joseph Meek, the appellant, and Joseph B. Greever were defendants. The case arose as follows: On the 10th day of December, 1885, an exchange of lands, in said county, was made between Meek and Spracher, the former receiving a tract of land in Burk's Garden and the bonds of Spracher and Greever for $2,300, in exchange for a tract of land lying on Bluestone river, near the town of Graham, at the junction of the New River and the Clinch Valley branches of the Norfolk and Western Railroad. The parties, respectively, make to each other conveyances of these tracts of land. At the time of the exchange Spracher agreed that Greever should have one-third of a designated part of the Bluestone tract, and of this agreement Meek was cognizant.

In October, 1886, Spracher filed his bill against Meek and Greever, in which, in addition to the foregoing, the following facts were set forth: That at the time of the exchange, Meek represented to Spracher and Greever that the Bluestone tract contained 800 acres in the aggregate, and assured them that there were 300 acres of cleared land within the boundary, south of Stony Ridge, the most valuable part of the tract. It was on this part that complainant expected to live with his family, it being accessible to Graham by the turnpike running through it. And it was on this part also that Greever was to get his portion, and on which he designed to locate his High-School, his profession being that of a teacher. Meek positively assured them that the tract contained, on the south of Stony Ridge, 300 acres; that it had been surveyed by Alex. St. Clair and others, when efforts were being made to have the Southwest Virginia Lunatic Asylum located at Graham; that the purchasers relied implicitly on Meek's assurances as to the area of the entire tract being 800 acres, and that 300 acres thereof, on the south side of Stony Ridge, was cleared land;

that they were thereby induced to make the exchange or purchase, and that without such representations and reliance they would not have made the same. That in order to ascertain the amount of boot which the one party should pay the other, Meek priced his Bluestone tract in three parcels—the said 300 acres of cleared land at $30 per acre, another part, as 200 acres, at $12, and the third, as 300 acres, at $8 per acre, making $13,500, from which Meek deducted $300 at the instance of Spracher.

The bill further sets forth that the said representations of Meek were false, and that he knew them to be false when he made them, and that neither St. Clair nor any one else connected with the said asylum ever represented to Meek that the boundary south of said ridge contained 300 acres of cleared land. And the bill charges that the same contains, by actual survey, only 158 acres, showing a deficiency of 142 acres, for which the complainant was entitled to compensation at the contract price of $30 per acre. He also charges that a portion of said tract containing —— acres was claimed by two persons, McDonald and Bane; and in conclusion, the bill prays that said Meek and Greever be made parties defendant, and be required to answer the same, but waiving answers under oath, and that compensation for the deficit, 142 acres, be decreed to the complainant, and for general relief.

Meek demurred to and answered the bill. By his answer he denied that he had had anything to do with his co-defendant, Greever, in the transaction, except to accept his bonds for the $2,300 mentioned in the bill. He admits that the deed conveying the Bluestone land to him calls for 800 acres, more or less, as also do the title bond and the deed whereby he conveyed the same to Spracher, but states that he told the complainant that he would rate the said tract in the exchange at only 700 acres, and that, when the title bond was executed, complainant said he wanted it to cover all of the land which the deed to respondent called for. He denied that he had

represented that there were 300 acres of *cleared* land south of the ridge, but thinks that he may have said there were 300 acres of *land* south of the ridge, and thinks Alex. St. Clair had perhaps estimated it at that quantity. He sets up as a defence, the allegation that Spracher had ample time to judge fully of the land, its quality and its quantity; that he and Greever had actually measured the lines and run around the land, and had as much opportunity to know it as he had. And in conclusion, he intimates a doubt as to the validity of the title to a part of the land received by him in the exchange, and a desire to have an investigation. Greever did not answer.

In January, 1888, depositions having been taken on both sides, the circuit court entered a decree directing the surveyor of Tazewell county to go upon the land conveyed by Meek and wife to Spracher, by deed dated 18th December, 1885, and make a survey of the tract, and of the part lying south of the Stony Ridge, showing how much is cleared. The order was executed and report thereof made to court.

In May, 1888, the cause came on upon the papers formerly read, together with the depositions and the report of survey and plat, when the court entered a decree overruling the demurrer and directing issues to determine; first, whether Spracher was induced to purchase the said land by fraud, or misrepresentations made to him, or his agent, by Meek; and, second, if so, what damages Spracher sustained in consequence thereof; prescribing that at the trial Spracher should be the plaintiff, and deferring the decision of all other questions until the verdict should be rendered and approved.

At the trial the plaintiff, Spracher, asked for eight instructions—seven of which the court gave to the jury as asked, and gave the eighth instruction with a modification; to which action of the court the defendant, Meek, excepted.

The jury returned their verdict in favor of the plaintiff, Spracher, on the issues aforesaid, and assessed his damages at $3,832, the value of the deficiency of 127.65 acres at $30 per

acre. The defendant, Meek, moved the court to set aside the verdict, which motion the court overruled and gave judgment according to the finding of the jury; to which action of the court the said defendant excepted, and prayed the court to certify all the evidence in the case, which was accordingly done.

The verdict of the jury upon the issues directed having been certified, and, when corrected in a slight particular, duly approved, the circuit court, at the November term, 1889, adjudged that the complainant, Spracher, for the benefit of himself and the defendant, Greever, is entitled to have an abatement of the price of the Bluestone tract as agreed upon in the purchase and exchange with Meek, to the extent of the value of 127.65 acres of cleared land, lying south of Stony Ridge, at $30 per acre, the same being the value of the deficiency in the 300 acres of cleared land as represented by Meek; and also to a further abatement of the purchase-price to the extent of the value of 15.59 acres, the same being the deficit in the outside land sold, and said value being the average value of the outside lands sold, to-wit, $9.60 per acre; and at the same time decreed that the complainant, for the benefit of himself and said Greever, recover of the defendant, Meek, $3,832, and also the sum of $158.65, those sums being the value of said deficiencies respectively, and the costs of the suit, which recovery is to be set off, so far as necessary, against any outstanding bonds of Spracher, or Greever, or both of them, for the unpaid purchase-money on the difference in the exchange of lands.

From this decree the defendant, Meek, appealed. The errors assigned by counsel for the appellant point out the grounds of contention in this court.

*Graham & Henry*, for the appellant.

*Williams & Bro.*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The first assignment is, that the court below erred in over-ruling the demurrer to the bill, because of the misjoinder of Joseph B. Greever as a party defendant, and because the fraud and misrepresentations in the bill are not clearly charged, and because there was an adequate remedy at law.

The grounds of error will be considered in the order in which they are stated: 1st. As to the misjoinder of Greever. It is the general rule in equity that all persons interested in the subject-matter of the bill, and which is involved in and affected by the result of the suit, must be made parties. Greever had an interest in the land which was the subject of controversy in this suit. He, it is true, was not a party named in the writings which evidenced the transactions between Spracher and Meek, but it had been agreed between Spracher and Greever that the latter should have a portion of the land purchased from Meek, and that fact was known to Meek, who accepted Greever's bonds for the payment of the $2,300, the difference agreed to be paid to Meek in the exchange of lands. As for making him a defendant, it may be remarked that the defendants to a bill in equity should consist of all persons interested in the relief sought, who are not already joined as plaintiffs. If no relief be sought, as, for instance, if the bill be for discovery alone, it cannot be objected to for want of parties; but if relief be asked, the prayer of process must be so framed as to bring all persons interested in the relief before the court, either as plaintiffs or defendants. In both of these points, however, the rule of equity differs from the rule of law, both in the necessity of joining all interested parties in the suit, and in the option of joining them as plaintiffs or defendants. At law, a disputed issue alone is contested; the immediate disputants alone are bound by the decision; and they alone are the proper parties to the action.

In equity, a decree is asked, and not a decision only; and it is, therefore, requisite that all persons should be before the court whose interest may be affected by the proposed decree, or whose concurrence is necessary to a complete arrangement. The same reason which requires that the immediate disputants be the only parties at law, also requires their arrangement as parties plaintiffs and defendants, so that all the plaintiffs shall support one side, and all the defendants the other side, of the question in issue. In equity, it is only requisite that the interests of the plaintiffs be consistent, and it is immaterial that the defendants are in conflict with each other or that some of their claims are identical with those of the plaintiff. And, although a conflict of interests among the defendants is no valid objection to a bill, it does not follow that the court will adjudicate on their conflicting claims; in fact, it will not do so, unless the division be necessary to the plaintiff's right. Adams' Eq. (6th Am. Ed.), top pp. 622, 623 and 624.

In the present case, the defendant, Greever's, interest was concurrent with that of the plaintiff, Spracher, and that interest was known to the defendant, Meek, and while it is true that Greever might have been joined as a plaintiff, yet it is no valid objection to the bill that he was joined as a defendant therein. He was interested in the relief sought by the bill, and while his interest was in conflict with that of his co-defendant, Meek, it was necessary to pass upon such conflicting interests in order to a proper adjudication of the rights of the plaintiff. Had Greever answered the bill, his answer could not have been used against his co-defendant, Meek. In any event, there is nothing to indicate that Meek suffered any disadvantage, or was likely to suffer any, by reason of the fact that Greever was a defendant rather than a plaintiff. We are clearly of opinion that the objection, upon the alleged ground of misjoinder, was not well taken.

A careful examination of the bill fails to disclose anything

to sustain the claim that fraud and misrepresentation are not clearly and specifically charged. The bill substantially states that Meek assured Spracher that the tract contained 800 acres, and that there were 300 acres of *cleared* land within the tract south of Stony Ridge; that Spracher relied on these assurances and was induced by them to make the purchase or exchange; but that these assurances were false, in that the tract contained less than 700 acres, and that there were only about 158 acres of cleared land within the tract south of Stony Ridge, and that Meek knew they were false when he made them. Certainly, it would seem that these words charged fraud and misrepresentation with sufficient clearness of specification.

Fraud and misrepresentation are among the elementary grounds of equitable jurisdiction and relief. Where they exist, the question of "an adequate remedy at law" can but rarely arise. It is true that the absence of an adequate remedy at law is generally a sufficient ground of equitable jurisdiction; but it is equally true that the existence of a remedy at law cannot deprive courts of equity of jurisdiction in a matter that comes within the scope of their elementary jurisdiction. In *Evans* v. *Bicknell*, 6 Ves., 182, speaking of fraud and misrepresentation, Lord Eldon said: "If there was jurisdiction at law, there was a concurrent jurisdiction in equity." In *Bacon* v. *Bunson*, 7 Johns., 201, Chancellor Kent, affirming this doctrine, said: "It is a principle of universal law that fraud and damage coupled together will entitle the injured party to relief in any court of justice." In this court very many suits in equity have been entertained where the bill alleges that complainant was inveigled to his injury into purchasing property by the fraud and misrepresentations of the vendor, and in which relief has been afforded either by rescission or in the form of damages. *Crump* v. *U. S. Mining Co.*, 7 Gratt., 352; *Brown* v. *Rice*, 26 Gratt., 473; *Wampler* v. *Wampler*, 30 Gratt., 454; *Grim* v. *Byrd*, 32 Gratt., 300; *Linkart*

v. *Foreman*, 77 Va., 540; *Lowe* v. *Trundle*, 78 Va., 65; *McMullen* v. *Saunders*, 79 Va., 356; *Shoemaker* v. *Cake*, 83 Va., 1.

Appellant's counsel, however, rely on *Abernathy* v. *Phillips*, 82 Va., 769, and *Green* v. *Spaulding*, 76 Va., 411, as authority for their position that in the case at bar the court of equity was without jurisdiction. In the case first named relief was sought on the ground of a breach of warranty of title. No fraud was charged, and this court dismissed the bill as being without equity, the remedy being by action at law. In the other case the complainant, an execution creditor, alleged that goods levied on by him were the individual property of the debtor, and liable for his debts, though the debtor claimed to be doing business as trustee only for the benefit of his wife and children under his father's will; and the complainant charged that this was fraud—a device to hinder, delay and defraud his creditors, and prayed for a receiver to take charge of the goods, for an account of debts, and for an application of his assets in payment of same. Staples, J., speaking for the court, said: "This is an application to a court of equity for a decree to enforce the lien of an execution upon the personal effects of the debtor, when the remedy of the creditor was to give the indemnifying bond, which the sheriff had demanded, and sell the goods under the execution." The bill in that case was properly dismissed for want of equity. The plain comment is that, merely denouncing a transaction as a fraud, does not make it such, and especially does it not make it such a fraud as it is peculiarly the province of a court of equity to take cognizance of. Whereas fraudulent misrepresentations of material matters, relied on by a party and inducing him to act to his injury, have always been regarded as matter of equitable jurisdiction and relief either by rescission or damages. 1 Story's Eq. Jur., § 193; *Smith* v. *Richards*, 13 Peters, 26; Adams' Eq., 177; Par. on Contracts, 177; *Rorer Iron Co* v. *Trout*, 83 Va., 397. It is plain that the court below did not err in overruling the demurrer to the bill.

The second ground assigned by the appellant for reversing the decree complained of is the action of the court sustaining the exceptions to Meek's answer, wherein he set up that the title to the Julia Ann Hall tract, part of the land received by him from Spracher in exchange for the Bluestone tract, was defective. Meek filed no cross-bill, nor did he ever ask that his answer be treated as such. Moreover, the answer does not allege that his possession of said land, for which he had received a conveyance, had been disturbed; on the contrary, he admits that it was premature for him to assail his title thereto. Besides, the deed of Spracher conveying this Julia Ann Hall tract to Meek shows on its face that Spracher conveyed only *his* entire *interest* therein to Meek. We, therefore, fail to perceive any error in the action of the circuit court in this particular; but if there was error, it was cured by the final decree, which expressly provides that "this decree is without prejudice to any party to this suit to hereafter bring any suit he may be advised to recover for any loss he may sustain because of defect of title to any portion of the land sold and exchanged, whereby either party may be deprived of the benefit of his purchase by adverse claimants."

3d. The third assignment of error is to the action of the circuit court in directing, *ex mero motu,* an issue out of chancery to be tried at the bar, on the common law side of the court, instead of itself hearing and deciding the case.

The unsworn answer of the defendant, Meek, carried with it no weight as evidence, and amounted only to a denial of the allegations in the bill. The depositions were all in, and the case had been submitted for decision in vacation; but the evidence was pointedly conflicting, and the case might well and reasonably appear to the chancellor to be one in which it was especially proper for the intervention of a jury to pass upon the credibility of the witnesses. The issues submitted were appropriate, and we are of opinion that this objection is also untenable. *Snouffer* v. *Hansbrough,* 79 Va., 166.

Passing by several assignments of error which, in our view of the case, are of minor importance, we come to the tenth and last objection taken to the decree complained of, which is that the circuit court erred in refusing to set aside the verdict of the jury, on the ground that it was contrary to and not supported by the evidence and was contrary to the law, and because of the misdirection of the court in its rulings during the trial.

The material charges in the bill, and on which the decision rested, have already been stated, but for the sake of convenience and precision, we here briefly re-state them as follows: That Meek assured Spracher that the tract contained 800 acres; that there were 300 acres of *cleared* land, within the tract, south of Stony Ridge; that Spracher relied on these assurances, and was induced by them to make the purchase; but that these assurances were false, in that the tract contained less than 700 acres, and there were only about 158 acres of *cleared* land within the tract, south of Stony Ridge, and that Meek knew they were false when he made them.

At the trial of the issues before the jury, Joseph B. Greever testified that he was to have one-third of the cleared land, south of Stony Ridge, and one-half of the other land; that he was induced to pay about $4,000 more for the land than he would have done, by the statement that there were 300 acres of the cleared land; that witness relied on Meek's statement, and it was affirmed by Meek; that he did not look at the land with a view to estimate it in any one boundary when he was there; that he and Spracher never surveyed it; that had he not relied on the statement that there were 300 acres of the improved land, he would not have given the price he did; that he never heard of 700 acres until the depositions were taken; that Meek never remarked to witness that there might not be but 700 acres; that when the title-bond was drawn, Meek said, "there might not be 800 acres, but what if there were not?" that witness replied, "We have traded on

the basis of 800 acres, and we want it;" and Meek said, "Draw up the title-bond for 800 acres;" that witness' name does not appear in the title-bond nor in the deed; that if the plaintiff succeeds in this case, witness gets the damages; that Meek valued the 300 acres of improved land, south of Stony Ridge, at $30 per acre; he valued 200 acres at $12 per acre, and 300 acres at $8 per acre; that witness' mind was directed to the improved land, and he said he did not think there were 300 acres of improved land south of Stony Ridge; that Meek asserted that it was there, that it had been surveyed for a lunatic asylum; that the matter was discussed then and there; that Spracher seemed to think Meek was right, and witness. yielded, and that the parties agreed on that basis; that Meek named Alex. St. Clair as one of the parties who surveyed the land, and told him that 300 acres were there.

W. L. Spracher testified that he had bought 300 acres of cleared land on the south side of Stony Ridge from Joseph Meek, priced at $30 per acre; that Meek affirmed that 300 acres were there, told where the lines were, and that it had been surveyed by Grat. Mustard, Alex. St. Clair, and another man; that witness relied upon Meek's representations, and that they contracted on that basis; that they priced the land in three parcels—300 acres at $30 per acre, 200 acres at $12 per acre, and 300 acres at $8 per acre, making in all $13,800; that witness grumbled and Meek deducted $300; that witness had agreed that Greever should have one-third of the cleared land, which agreement was known to Meek; that Meek figured and priced the land to witness on the basis of 800 acres; that witness let Meek have land which they valued at $11,200, and Greever's bond's for $2,300, making $13,500 for the Bluestone land; that he and Greever did not survey the land.

Alex. St. Clair testified that he never told Joseph Meek that Mustard and witness had surveyed the cleared land south of Stony Ridge, and that it contained 300 acres, and that he had seen Meek over there two or three times a year.

The report of the county surveyor of Tazewell county shows that the tract of land sold by Joseph Meek to W. L. Spracher, and conveyed by deed of 18th December, 1885, contains 656.68 acres, and that 369.27 acres of same lies south of Stony Ridge, and that of the latter there are 172.27 acres of cleared land. This was all of the plaintiffs parol evidence before the jury. The depositions taken on behalf of the plaintiff are substantially to the same effect.

On behalf of the defendant, Meek, his own deposition was read to the jury, wherein he deposed that he represented that the tract contained 700 acres; that the old papers called for 800 acres; that Spracher insisted that witness should sign the title bond for 800 acres, that he wanted the entire Bluestone tract for his land in Burk's Garden, that it did not matter how much was there, they were willing to take the witness' tract of land for their tract and pay him $2,300; that there was something said about the land on the south side of Stony Ridge, and that witness may have told them that there were 300 acres on the south side, and that at the same time witness told them that he had never had it surveyed; that it was mere guess work with him as to the *cleared* land; that he never told them there were 300 acres of it on the south side, but that there were 300 acres of *land* on the south side of the ridge; that he never had any contract with Greever, but supposed he was acting for Spracher, if for anybody; that Spracher told witness that he had been over and examined the Bluestone land, and that he and Greever had surveyed a part of it; that witness learned from Alex. St. Clair that there were about 300 acres of land on the south side of Stony Ridge, but that he did not say that there was that much of *cleared* or *improved* land or anything about that; and that witness never represented to Spracher that St. Clair and others had surveyed this land.

J. R. Meek, a son of the defendant, Joseph Meek, testified that he was present only a part of the time the trade was going on and did not hear all that was said, and did not remember

having heard his father tell Spracher or Greever that there were 300 acres of cleared land south of Stony Ridge; that Greever wrote the title bond, and witness wrote the notes for the $2,300. And this was the substance of the testimony before the jury on behalf of the defendant, Meek.

In rebuttal, the plaintiff introduced the county surveyor, H. P. Britain, who testified to the accuracy of his survey, the result of which has already been stated. The plaintiff also introduced J. E. McDonald and W. E. Bane, owners of lands adjoining the Bluestone tract, who testified to nothing material to the issues.

Such was substantially the evidence adduced before the jury, and upon which, together with the documentary evidence, the jury returned their verdict to the effect that the plaintiff had been induced to purchase the said Bluestone tract of land by means of the fraudulent misrepresentations of the defendant, Joseph Meek, made to the plaintiff, or his agent, by said Meek, as to the quantity of land in said tract, and as to the quantity of *cleared* land therein, south of Stony Ridge, and that the plaintiff had sustained damage by reason thereof.

This verdict was certified to the chancery side of said circuit court and was approved thereby. And it was this verdict that the defendant Meeks asked the court below to set aside as being contrary to the law and the evidence. And it is the refusal of that court, in whose presence all this evidence was given, to allow the motion, which is assigned by counsel for the appellant as error for which the decree of that court, giving effect to said verdict, should be reversed. But we are of opinion that there is no error in the action of the court below refusing to disturb the verdict.

There are, in the petition, several assignments of error, founded on rulings of the court below as to the admission and the rejection of evidence, and as to giving and refusing to give to the jury certain instructions. After a careful examination of each of these objections, predicated upon the action

of the court below in either admitting or rejecting evidence, or in giving or refusing to give instructions, we have failed to discover any error for which the decree complained of should be reversed. Nor do we perceive how the verdict of the jury could have been affected by these rulings, or either of them. The solution of the questions—the issues submitted to the jury —depended upon the credibility of the witnesses, and of this the jury were the appropriate judges, and they have legitimately responded by their verdict. In *Snouffer* v. *Hansbrough*, 79 Va., 166, this court held, as it had repeatedly held before, that where, because of a conflict of testimony, an issue is directed, the solution of which depends on the credibility of witnesses, and the verdict is sanctioned by the trial court, the settled rule is, that the appellate court will consider not merely whether the evidence warrant the verdict, but, also, whether, upon the whole, further investigation is necessary to justice; and though there may have been misdirection, or improper rejection of evidence, it will not grant a new trial, if, on considering the evidence, including that rejected, the verdict appears right. In the present case, as already intimated, we are of opinion that the evidence warranted the verdict of the jury, and that the same is right.

We are, therefore, of opinion that the decree complained of is without error, and the same must be affirmed.

DECREE AFFIRMED.